1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SARA LEANN KYKER,                          No.  2:14-cv-00534-AC

12              Plaintiff,

13        v.                                     ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
15
                Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying her application for Disability Income Benefits ("DIB") under Title II

20   of the Social Security Act ("Act").  For the reasons discussed below, the court will grant

21   plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary

22   judgment, and remand this matter under sentence four of 42 U.S.C. § 405(g) for immediate

23   payment of benefits.

24                         I.   PROCEDURAL BACKGROUND

25        Plaintiff applied for DIB on December 21, 2010, alleging disability beginning December

26   16, 2009.  Administrative Transcript ("AT") 190.  Plaintiff alleged she was unable to work due to

27   fibromyalgia, spine impairment, severe back pain, depression, hip pain, left knee impairment,

28   right knee impairment, multiple joint arthritis, coronary artery disease, headaches, anxiety,

                                           1

asthma, memory loss and plantar fasciitis.  AT 212.  In a decision dated September 27, 2012, the

ALJ determined that plaintiff was not disabled.  AT 37.  The ALJ made the following findings

(citations to 20 C.F.R. omitted):

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2.  The claimant has not engaged in substantial gainful activity since December 16, 2009, the alleged onset date.
>
> 3.  The claimant has the following severe impairments: obesity, fibromyalgia, migraines, right knee torn ligament, asthma, mild degenerative disc disease, and a mood disorder.
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work . . . except she is limited to simple work with one to three step instructions.  The work must involve only limited interaction with co-workers, no contact with the public, and only limited contact with supervisors (at the beginning and end of the shift and two to three times during the shift).  She cannot work in an environment with dust, odors, chemicals, etc.[]  Finally, she is unable to kneel, should only rarely bend or stoop, and should avoid humidity or extreme hot or cold temperatures.
>
> 6.  The claimant is capable of performing past relevant work as an amp assembler, light (according to the DOT, sedentary as performed), unskilled.  This work does not require the performance of work-related activities precluded by the claimant's residual function capacity.
>
> 7.  The claimant has not been under a disability, as defined in the Social Security Act, from December 16, 2009, through the date of this decision.

AT 28-37.

## II.   FACTUAL BACKGROUND

Born on September 26, 1976, plaintiff was 33 years old on the alleged onset date of

disability and 35 at the hearing before the ALJ.  AT 53, 190.  Plaintiff testified that she completed

some vocational training.  AT 56.  In the past, she worked as an amper, a manager and a data

entry technician.  AT 202.

////

1                    III.    ISSUES PRESENTED

2        Plaintiff argues that the ALJ improperly discredited the opinion of her treating physician

3 and improperly evaluated her credibility.

4                 IV.    LEGAL STANDARDS

5        The court reviews the Commissioner's decision to determine whether (1) it is based on

6 proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

7 as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

8 evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

9 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

10 mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th

11 Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  "The ALJ is

12 responsible for determining credibility, resolving conflicts in medical testimony, and resolving

13 ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

14 "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

15 rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

16        The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

17 Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

18 conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not

19 affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see

20 also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

21 administrative findings, or if there is conflicting evidence supporting a finding of either disability

22 or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

23 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

24 weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

25                 V.    ANALYSIS

26      A.  Medical Opinion of Dr. John Booker

27        Plaintiff contends the ALJ improperly discredited the opinion of plaintiff's treating

28 physician, Dr. John Booker.  There are three types of physicians relevant to disability

1    determinations: treating physicians, examining physicians, and nonexamining physicians.  "If a

2    treating doctor's opinion is not contradicted by another doctor (i.e., there are no other opinions

3    from examining or nonexamining sources), it may be rejected only for 'clear and convincing'

4    reasons supported by substantial evidence in the record."  See Ryan v. Comm'r of Soc. Sec.

5    Admin., 528 F.3d 1194, 1198 (9th Cir. 2008); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).

6    "If the ALJ rejects a treating or examining physician's opinion that is contradicted by another

7    doctor, he must provide specific, legitimate reasons based on substantial evidence in the record."

8    Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); Ryan, 528 F.3d at

9    1198.

10    "[T]he medical opinions of a claimant's treating physicians are entitled to special weight."

11    Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988).  If the ALJ disregards a treating physician's

12    opinion, the ALJ must "set[] out a detailed and thorough summary of the facts and conflicting

13    clinical evidence, stating his interpretation thereof, and making findings."  Id. (quoting Cotton v.

14    Bowen, 799 F.2d 1403, 1408 (9th Cir.1986)).  Moreover, "[t]he ALJ need not accept the opinion

15    of any physician, including a treating physician, if that opinion is brief, conclusory, and

16    inadequately supported by clinical findings."  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.

17    2002).  "To evaluate whether an ALJ properly rejected a medical opinion, in addition to

18    considering its source, the court considers whether (1) contradictory opinions are in the record;

19    and (2) clinical findings support the opinions."  Esposito v. Astrue, 2012 WL 1027601, CIV S-

20    10-2862-EFB at *3 (E.D.Cal. Mar. 26, 2012).

21    A nonexamining physician's function is to read medical evidence in a claimant's case

22    records, decide whether or not the claimant's impairments meet or equal the Listings, and

23    determine the claimant's Residual Functional Capacities.  20 C.F.R. § 416.927(e)(1)(i).  Because

24    nonexamining physicians do not have the benefit of hearing the claimant's complaints of pain,

25    their opinions as to claimant's pain are of "very limited value."  Penny v. Sullivan, 2 F.3d 953,

26    957 (9th Cir. 1993).

27    ////

28    ////

1    Dr. John Booker reported that he began treating plaintiff in May 2009 and he had seen

2    plaintiff approximately once every one to three months.  AT 453.  In January 2011, Dr. Booker

3    prepared a Multiple Impairment Questionnaire on plaintiff's behalf.  AT 363, 370.  He diagnosed

4    plaintiff with fibromyalgia, chronic low back pain, asthma, obesity, and depression.  AT 363.  He

5    supported this diagnosis with clinical findings that plaintiff had multiple tender points and poor

6    mobility.  AT 363.  He opined that plaintiff could sit for three hours and stand and walk for one-

7    to-two hours in an eight-hour day, required a sit and stand option allowing her to stand every 15

8    minutes, could occasionally lift and carry 10 pounds, would require multiple unscheduled breaks

9    for as long as one hour, and would be absent from work more than three times a month as a result

10    of her impairments.  AT 364-69.  In July 2012, Dr. Booker prepared a narrative opinion stating

11    that plaintiff has marked limitations in her ability to reach, moderate limitations to use her hands

12    for grasping, turning, twisting objects, and for fine manipulations, can sit for three hours, stand

13    walk for one-to-two hours in an eight-hour workday, can lift and carry ten pounds occasionally, is

14    precluded from pulling, kneeling, bending, and stooping, and her psychological and poor vision

15    limits her ability to work at a regular job on a sustained basis.  AT 442.  He further opined that

16    plaintiff is incapable of tolerating low work stress and that she could be expected to be absent

17    from work more than three times a month.  AT 442.

18    The ALJ assessed Dr. Booker's opinion as follows:

19    I give his opinion little weight as it is not consistent with his
     treatment notes which indicate the claimant was doing yard work,
20    walked with a normal gait, and went to Universal Studios.  Further,
     his opinion is inconsistent with her normal EMG and normal range
21    of motion to all joints . . . .  The claimant also had a permanent
     disability placard due to chronic left ankle pain, and right knee
22    sprain . . . .  I note a disability placard is not equivalent to a finding
     of disability from Social Security as we have different standards for
23    a disability.

24    AT 34.  The ALJ was required to provide, at the very least, specific and legitimate reasons,

25    supported by substantial evidence, for rejecting the opinion of Dr. Booker.  See Valentine, 574

26    F.3d at 692.  The reasons cited above fail to meet that requirement.

27    ////

28    ////

1    As an initial matter, the reasons given above are general rather than specific.  The ALJ did

2  not identify the portions of Dr. Booker's opinion which she found objectionable.  It appears the

3  ALJ rejected Dr. Booker's ultimate conclusion that plaintiff was completely disabled, however

4  the ALJ did not provide specific reasons for rejecting, for example, Dr. Booker's opinion that

5  plaintiff would be absent from work at least three days per month due to her impairments.  Thus,

6  the ALJ failed to give specific reasons for rejecting Dr. Booker's opinion.

7    Furthermore, the reasons given above are either not legitimate or not supported by

8  substantial evidence.  The ALJ stated that Dr. Booker's opinion is inconsistent with his treatment

9  notes, which reported that plaintiff was doing yard work, walked with a normal gait, and took a

10  trip to Universal Studios.  AT 34.  The record indicates that plaintiff attempted to do yard work in

11  2010 but fainted twice (AT 346); plaintiff reported that "yard work would be impossible" and that

12  she and her husband have a gardener (AT 223); and plaintiff's husband reported that plaintiff

13  could not do yard work (AT 243).  Accordingly, the record does not establish plaintiff's

14  performance of yard work inconsistent with Dr. Booker's assessment of her limitations.

15    That plaintiff can walk with a normal gait is not a legitimate reason for rejecting Dr.

16  Booker's opinion.  The ALJ failed to articulate how plaintiff's ability to walk with a normal gait

17  negates Dr. Booker's opinion regarding plaintiff's sitting, standing and walking limitations,

18  requirements of a sit-and-stand option, and work attendance limitations.  See AT 364-69.

19  Plaintiff indicated that she took a trip to Universal Studios and overate.  AT 429.  How a trip to

20  Universal Studios negates Dr. Booker's opinion is also unclear.

21    The ALJ also reasoned that Dr. Booker's opinion is inconsistent with plaintiff's normal

22  EMG and normal range of motion to all joints.  On December 6, 2010, Dr. Liu performed a

23  needle EMG of select leg muscles on plaintiff.  AT 275.  The findings showed no lumbosacral

24  radiculopathy or peripheral neuropathy and the results were normal.  AT 275, 277.  On August

25  29, 2011, Dr. Booker reported that plaintiff had normal range of motion in all joints.  AT 409.

26  The ALJ failed to articulate how plaintiff's normal test results negate Dr. Booker's opinion.  It is

27  well established that a person suffering from fibromyalgia may exhibit normal test results and

28  range of motion, yet still experience severe pain and limitations from the condition.  See Benecke

6

1   v. Barnhart, 379 F.3d 587, 589-90 (9th Cir. 2004) (fibromyalgia "is diagnosed entirely on the

2   basis of patients' reports of pain and other symptoms.  The American College of Rheumatology

3   issued a set of agreed-upon diagnostic criteria in 1990, but to date there are no laboratory tests to

4   confirm the diagnosis.").  A finding that a claimant is not disabled due to fibromyalgia may not be

5   based on the absence of "'objective' evidence for a disease that eludes such measurement."  Id. at

6   594 (quoting Green-Younger v. Barnhart, 335 F.3d 99, 108 (2d Cir. 2003)).

7        The Commissioner asserts that because Dr. Booker's opinion is based on plaintiff's

8   subjective complaints, and plaintiff is not credible, Dr. Booker's opinion therefore is not credible.

9   ECF No. 13.  As more fully discussed below, the ALJ permissibly discredited plaintiff's

10  testimony regarding the intensity, persistence and limiting effects of her symptoms.  However, the

11  Commissioner's argument that Dr. Booker's opinion is not credible because it based on plaintiff's

12  subjective complaints is without merit.  First, the ALJ did not expressly rely on this reasoning to

13  reject Dr. Booker's opinion.  As discussed above, the ALJ rejected Dr. Booker's opinion because

14  it was inconsistent with his treatment notes and inconsistent with plaintiff's "normal" test results.

15  AT 34.  This court reviews the adequacy of the reasons specified by the ALJ, not the post hoc

16  rationalizations of the agency.  See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (court

17  is constrained to review the reasons the ALJ asserts).  For the reasons previously identified, the

18  ALJ's stated reasons do not constitute specific and legitimate reasons, supported by substantial

19  evidence, for rejecting Dr. Booker's opinion.

20        Moreover, even if the ALJ's opinion could be interpreted to include this rationale, the

21  Commissioner's argument still fails because Dr. Booker's opinion was not based solely on

22  plaintiff's complaints but was also grounded in Dr. Booker's own observations and examinations

23  of plaintiff over an extended period of time.  See e.g., AT 453 (identifying multiple tender points

24  and poor mobility as positive clinical findings supporting his diagnosis).  Accordingly, ALJ erred

25  in assessing Dr. Booker's opinion.

26        B.  Plaintiff's Credibility

27        Plaintiff contends that the ALJ failed to provide sufficient reasons for discrediting her

28  subjective complaints.  The ALJ determines whether a disability applicant is credible, and the

7

1    court defers to the ALJ's discretion if the ALJ used the proper process and provided proper

2    reasons.  See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the

3    ALJ must make an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th

4    Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility

5    finding to be supported by "a specific, cogent reason for the disbelief").

6          In evaluating whether subjective complaints are credible, the ALJ should first consider

7    objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341,

8    344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ

9    then may consider the nature of the symptoms alleged, including aggravating factors, medication,

10   treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the

11   applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

12   testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

13   prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

14   1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-

15   01; SSR 88-13.  Work records, physician and third-party testimony about nature, severity and

16   effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.

17   Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an

18   allegedly debilitating medical problem may be a valid consideration by the ALJ in determining

19   whether the alleged associated pain is not a significant nonexertional impairment.  See Flaten v.

20   Sec'y of Health & Human Servs., 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part,

21   on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir.

22   1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6

23   (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the

24   Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

25   Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

26          Plaintiff reported that she was unable to work due to a combination of impairments

27   including fibromyalgia, spine impairment, severe back pain, depression, hip pain, left knee

28   impairment, right knee impairment, multiple joint arthritis, coronary artery disease, headaches,

1    anxiety, asthma, memory loss, and plantar fasciitis.  AT 212.  At the hearing before the ALJ,

2    plaintiff testified that she cannot work because she has migraines every day, suffers from

3    fibromyalgia, has bursitis in both hips and her lower back, her right knee has been injured, and it

4    is difficult to walk or sit.  AT 58.  She testified she feels pain all over but mostly in her lower

5    back down to her toes.  AT 58.  The ALJ found plaintiff's statements concerning the intensity,

6    persistence and limiting effects of her symptoms not credible because the medical evidence did

7    not corroborate plaintiff's reports, plaintiff failed to receive treatment for her depression,

8    plaintiff's daily activities show she was not as disabled as she claimed, and plaintiff made

9    numerous inconsistent statements.  AT 32.

10          As to the inconsistency between plaintiff's reports and the medical evidence, the ALJ

11   gave the following examples.  AT 32.  Plaintiff reported having chicken pox in September 2010

12   (AT 227), however, treatment notes from Dr. Liu and Dr. Booker in September 2010 showed no

13   indication of chicken pox (AT 280, 358).  She reported needing to constantly wear splints for

14   plantar fasciitis (AT 69-70) despite Dr. Grandt reporting that plaintiff's plantar fasciitis problem

15   had completely resolved (AT 310).  Plaintiff reported spending her days in a recliner, watching

16   television and feeling so exhausted that she could not stay awake.  However, plaintiff reported

17   that she had fainted twice while performing yard work (AT 343), worked on very hard floors (AT

18   313), paid bills (AT 311), and was going to visit Universal Studios where she would be doing a

19   lot of walking (AT 425).  This reason was legitimate and supported by the record.

20          As to plaintiff's failure to receive treatment for depression, a failure to seek treatment for

21   an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining

22   whether the alleged associated pain is not a significant nonexertional impairment.  See Flaten v.

23   Sec'y of Health & Human Servs., 44 F.3d 1453, 1464 (9th Cir. 1995).  However, in this instance,

24   plaintiff actually received treatment for her depression; her prescription regimen included

25   medication for depression.  AT 288-305, 363-71, 396-43, 443-47.  This reason was not sufficient

26   to discount plaintiff's testimony and reports.

27          As to plaintiff's daily living activities, the ALJ asserted that they are inconsistent with

28   plaintiff's reports and testimony of disability.  Although she answered "yes" the question: "Do

you take care of anyone else such as a wife/husband [or] children . . . ," plaintiff stated that her husband and five children do more for her than she does for them.  AT 221.  She stated that she does not know what she does to take care of her children but loves them.  AT 221.  Plaintiff takes care of a very small dog but her children help feed the pet.  AT 221.  She reported that she sometimes does not change her clothes for three days in a row, bathing takes 45 minutes because it is painful, it is difficult to shave her legs, she wipes down counters and tries to do two-to-three loads of laundry a day.  AT 221-22.  The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.  One does not need to be 'utterly incapacitated' in order to be disabled."  Vertigan v. Halter, 260 F.3d 1044, 1050 (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  The activities plaintiff reported performing on a daily basis are not necessarily applicable to the work setting.  Moreover, plaintiff's ability to do light cleaning, some laundry, drive, and shop is limited in that she usually takes longer to complete these tasks or sometimes does not complete them at all.  AT 242 (husband reporting that it takes plaintiff more time than usual to complete light cleaning laundry and sometimes cannot finish chores).  As such, plaintiff's daily living activities were insufficient to discredit her symptom reports.

Finally, plaintiff's inconsistent statements are a legitimate reason for discrediting her testimony.  See Smolen, 80 F.3d at 1284.  For example, the ALJ noted plaintiff's testimony that she last worked in 2009, but records show she worked at Burger King 2010.  AT 28, 193, 201-02.  Also, as discussed above, plaintiff reported needing to wear splints despite a doctor's report that her plantar fasciitis had completed resolved (AT 69-70, 310) and reported having a serious case of chicken pox in September 2010 although treatment notes from that time showed no indication of chicken pox (AT 227, 280, 359).  The court finds the inconsistencies between plaintiff's reports and the medical evidence and plaintiff's own inconsistent statements sufficient reasons to discredit her testimony.  Thus, the ALJ did not err in this regard.

////

///

1        C.  Remand

2            Although this court must defer to the ALJ's assessment of plaintiff's credibility, the error

3    in evaluating the opinion of plaintiff's treating physician requires remand.  The remaining

4    question is whether to remand this case to the ALJ for further proceedings or to order the payment

5    of benefits.  "The decision whether to remand the case for additional evidence or simply to award

6    benefits is within the discretion of the court."  Stone v. Heckler, 761 F.2d 530, 533 (9th Cir.

7    1985).  Generally, the Court will direct the award of benefits "in cases where no useful purpose

8    would be served by further administrative proceedings or where the record has been thoroughly

9    developed."  Varney v. Secretary of Health and Human Services, 859 F.2d 1396, 1399 (9th Cir.

10   1987).  Remand for payment of benefits is appropriate where:

11            (1) the ALJ has failed to provide legally sufficient reason for
             rejecting . . .. evidence, (2) there are no outstanding issues that must
12           be resolved before a determination of disability can be made, and
             (3) it is clear from the record that the ALJ would be required to find
13           the claimant disabled were such evidence credited.

14   Smolen, 80 F.3d at 1292.  The Ninth Circuit has ordered remand for payment of benefits when

15   there is testimony from the vocational expert that the limitations found by discredited opinion

16   would render the plaintiff unable to engage in any work. See e.g., Varney v. Sec'y Health &

17   Human Servs., 859 F.2d 1396, 1401 (9th Cir. 1988) ("Accepting [the plaintiff's] pain testimony

18   as true, the vocational expert's testimony establishes that she cannot work and is entitled to

19   disability benefits."); Smolen, 80 F.3d at 1291 (remand for payment of benefits appropriate when

20   the plaintiff had work attendance limitations which the vocational expert opined would preclude

21   the plaintiff from even sedentary work); Reddick v. Chater, 157 F.3d 715, 729 (9th Cir. 1998)

22   (remanded for payment of benefits where vocational expert testified that if plaintiff's testimony

23   were credited she would be unable to perform her past work or any other work).

24           As explained above, the ALJ failed to provide legally sufficient reasons for rejecting the

25   opinion of Dr. Booker, a treating physician.  As a result, that opinion is credited as a matter of

26   law.  See Lester v. Chater, 81. F.3d 821, 834 (9th Cir. 1995) ("Where the Commissioner fails to

27   provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit

28   that opinion 'as a matter of law.'").  It is clear from the record that the ALJ would have been

1   required to find plaintiff disabled if Dr. Booker's opinion had been credited.

2          At step five, the ALJ found that plaintiff could perform past relevant work as an amp

3   assembler, relying in part on the vocational expert's testimony.  AT 35.  The ALJ alternatively

4   found that there are other jobs existing in the national economy which plaintiff can perform,

5   relying on the vocational expert's testimony that a person with plaintiff's limitations, as the ALJ

6   assessed them, could perform work as a cloth cutter, thread cutter and mail sorter.  AT 36.  The

7   vocational expert opined that a person limited to light and simple work, requiring limited

8   interaction with coworkers and supervisors and no contact with the public, could perform

9   plaintiff's past work as an assembler and other work as a cloth cutter, thread cutter and mail

10  sorter.  AT 76.  When the hypothetical limited the person to sedentary work, the vocational expert

11  opined the person could not perform plaintiff's past work but could perform other work as a table

12  worker and a sticker.  AT 76.  Plaintiff's administrative counsel asked the vocational expert

13  whether, in addition to the limitations identified by the ALJ, a person who required a sit and stand

14  option could perform either past work or the alternative jobs.  AT 77.  The vocational expert

15  answered "no."  AT 77.  Also, when asked whether a person who, in addition to the limitations

16  identified by the ALJ, would be absent three times per month could perform either past work or

17  the alternative jobs, the vocational expert answered "no."  AT 78.

18          The limitations identified by administrative counsel were consistent with Dr. Booker's

19  opinion stating that plaintiff required a sit and stand option (AT 364) and would be absent from

20  work more than three times per month (AT 369).  It is accordingly clear that the ALJ would have

21  been required to find plaintiff disabled at step five of the sequential evaluation analysis had Dr.

22  Booker's opinion been credited, because there are no jobs that plaintiff can perform given her

23  residual functional capacity, age, education, and work experience.  For these reasons, this matter

24  will be remanded under sentence four of 42 U.S.C. § 405(g) for immediate payment of benefits.

## VI.   CONCLUSION

26         For the reasons stated herein, IT IS HEREBY ORDERED that:

27         1.  Plaintiff's motion for summary judgment (ECF No. 12) is granted;

28         2.  The Commissioner's cross-motion for summary judgment (ECF No. 13) is denied; and

1          3.  This matter is remanded to the Commissioner for immediate payment of benefits.

2   DATED: May 28, 2015

3   _____
    ALLISON CLAIRE
4   UNITED STATES MAGISTRATE JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28